# United States Court of Appeals for the Federal Circuit

05-1073

CORRPRO COMPANIES, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Jerry P. Wiskin, Simons & Wiskin, of South Amboy, New Jersey, argued for plaintiff-appellee.  With him on the brief was Philip Y. Simons.

Aimee Lee, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of New York, New York, argued for defendant-appellant.  With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, of Washington, DC; and Barbara S. Williams, Attorney in Charge, of New York, New York.  Of counsel on the brief was Beth C. Brotman, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from:  United States Court of International Trade

Senior Judge Richard W. Goldberg

# United States Court of Appeals for the Federal Circuit

05-1073

CORRPRO COMPANIES, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED: January 3, 2006
_____

Before LOURIE, CLEVENGER, and LINN, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

The United States appeals from the decision of the United States Court of International Trade denying the government's motion to dismiss for lack of jurisdiction, granting Corrpro Companies, Inc.'s ("Corrpro's") motion for summary judgment, and classifying the subject merchandise under Harmonized Tariff Schedule of the United States ("HTSUS") MX 8543.40.00, duty-free. <u>Corrpro Cos. v. United States</u>, slip op. 04-116 (Ct. Int'l Trade Sept. 10, 2004) ("<u>Decision</u>"). Because Customs did not make a protestable decision as to North American Free Trade Agreement ("NAFTA") eligibility giving rise to jurisdiction in the Court of International Trade under 28 U.S.C. § 1581(a), we reverse.

BACKGROUND

This case arises from Corrpro's attempt to claim preferential treatment under NAFTA for certain entries of sacrificial magnesium anodes. Enacted on December 8, 1993, NAFTA is an agreement between the United States, Canada, and Mexico to promote the free flow of goods through a reduction or phased elimination of tariffs and non-tariff barriers to trade. 19 U.S.C. § 3312 (1994) (approving and implementing NAFTA). See Xerox v. United States, 423 F.3d 1356, 1359 (Fed. Cir. 2005). Preferential tariff treatment under NAFTA allows importers to enter qualified goods into the United States free of duty.

Under NAFTA, an importer's right to preferential tariff treatment for qualifying goods does not vest automatically on entry. Id. at 1361. As provided in Articles 501(1) and 503(1) of NAFTA, implemented in 19 C.F.R. § 181.21(a), an importer seeking preferential tariff treatment under NAFTA must make a written declaration that the goods qualify for NAFTA treatment and must base that declaration on a properly executed NAFTA "Certificate of Origin" that covers the goods being imported. 19 C.F.R. §§ 181.11(a), 181.21(a) (2005) ("A Certificate of Origin shall be employed to certify that a good being exported either from the United States into Canada or Mexico or from Canada or Mexico into the United States qualifies as an originating good for purposes of preferential tariff treatment under the NAFTA.").

However, an importer is not required to submit a written declaration and the appropriate NAFTA Certificates of Origin immediately upon entry of the subject goods. Xerox, 423 F.3d at 1361. Under Article 502(3) of NAFTA, codified at 19 U.S.C. § 1520(d), an importer who does not make a NAFTA claim at the time of entry may

05-1073                                      -2-

nevertheless apply for a "refund of any excess duties paid" on a good qualifying for NAFTA treatment by submitting a written declaration and the appropriate Certificates of Origin "within 1 year after the date of importation." 19 U.S.C. § 1520(d) (2000). In this case, Corrpro claims that its imported goods are entitled to NAFTA treatment even though it did not make a NAFTA claim at the time of entry or within one year of entry.

On August 16, 1999, Corrpro began importing magnesium anodes into the United States. Decision, slip op. at 2-3. The United States Bureau of Customs and Border Protection ("Customs")* classified the goods under HTSUS 8104.19.00 as "[m]agnesium and articles thereof, including waste and scrap: Unwrought magnesium: Other" at the rate of 6.5 percent ad valorem. Id. Corrpro did not make a claim for NAFTA treatment at the time of entry under 19 C.F.R. § 181.21(a). Id., slip op. at 3. On June 30, 2000, Customs liquidated the subject merchandise under 19 U.S.C. § 1500. Customs did not accord the goods any preferential treatment under NAFTA because Corrpro had not yet raised the issue. Id.

Corrpro also did not claim preferential treatment under NAFTA within one year of the date of importation under 19 U.S.C. § 1520(d). However, on September 12, 2000, Corrpro filed protests to Customs' liquidation under 19 U.S.C. § 1514(a), arguing that the goods were classifiable as HTSUS MX 8543.30.00, free of duty under NAFTA. Id. Section 1514(a) is a procedural mechanism by which an importer may protest Customs' decision pertaining to the classification, rate, and amount of duties, but it does not specifically relate to NAFTA eligibility. See Xerox, 423 F.3d at 1365 (dismissing for lack

---

* Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135, 2308-09 (2002).

of jurisdiction "a post-importation [NAFTA] claim under the guise of a 19 U.S.C. § 1514(a) protest more than a year after entry").

Corrpro claimed preferential treatment under NAFTA in its 19 U.S.C. § 1514(a) protest without filing a written declaration or Certificates of Origin substantiating its assertion of NAFTA eligibility. On August 13, 2001, Customs denied Corrpro's protests in full. Decision, slip op. at 3. Later in 2002, for the first time, Corrpro submitted to Customs Certificates of Origin covering the goods, after it had filed a complaint in the Court of International Trade. Id., slip op. at 18 n.3 (noting that the parties dispute whether the Certificates of Origin were filed on February 4, 2002, as stated in the affidavit attached to the Certificates, or on June 27, 2002, the date indicated on the certificates themselves).

Corrpro had filed its complaint in the Court of International Trade seeking preferential duty treatment for the imported goods on September 6, 2001. In its complaint, Corrpro asserted that the trial court had jurisdiction under 28 U.S.C. § 1581(a) because of its 19 U.S.C. § 1514(a) protest challenging the "classification and the rate and amount of duties chargeable." Id., slip op. at 3. Corrpro then moved for summary judgment that the subject merchandise was entitled to preferential duty treatment under NAFTA. Id., slip op. at 1-2. On September 10, 2004, the Court of International Trade held that it had jurisdiction to entertain the action and granted Corrpro's motion for summary judgment.

In determining whether Customs had made a protestable decision that conferred jurisdiction over Corrpro's NAFTA claims, the trial court first held that Customs' initial classification of the goods was a decision on NAFTA eligibility that could be protested,

even though Customs had not expressly considered the question of preferential treatment under NAFTA at that time. Id., slip op. at 13-14. The trial court reasoned that this inference was warranted because Corrpro had been precluded by Customs Headquarters Ruling Letter ("HQ") 557046 from making a NAFTA claim at the time of entry. Id. HQ 557046, which provides that anodes classifiable in HTSUS 8104.19.00 are not eligible for duty-free treatment under the Generalized System of Preferences, was issued on May 17, 1993, prior to the enactment of NAFTA (although it was retracted on October 10, 2001). The trial court therefore concluded that Corrpro had acted properly under a standard of reasonable care in not seeking NAFTA treatment at the time of entry or within one year of entry. Id., slip op. at 9-10. Second, the trial court held that Corrpro's post-importation submission of NAFTA Certificates of Origin met the procedural requirements of 19 C.F.R. § 10.112 because Corrpro's delay in submission had resulted from its adherence to Customs' classification ruling. Id., slip op. at 17-18. Third, the trial court held that the subject merchandise satisfied NAFTA's rules of origin and thus was eligible for preferential treatment under NAFTA as a matter of law. Id., slip op. at 22-24.

The government timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

We review the Court of International Trade's jurisdictional ruling based on its interpretation of 19 U.S.C. §§ 1514 and 1520(d) de novo. Xerox v. United States, 423 F.3d 1356, 1359 (Fed. Cir. 2005). We also review that court's grant of summary

judgment de novo.  Int'l Trading Co. v. United States, 412 F.3d 1303, 1307 (Fed. Cir. 2005).

The government makes three arguments on appeal.  First, the government contends that the Court of International Trade should have dismissed the complaint for lack of jurisdiction because there was no protestable decision by Customs regarding NAFTA eligibility.  The government asserts that, contrary to the reasoning of the trial court, HQ 557046 did not preclude Corrpro from making a NAFTA claim at the time of entry or within one year of the date of importation because (1) had Corrpro filed a protest against the initial classification, Corrpro could then have filed a 19 U.S.C. § 1520(d) petition that would have been protestable even though it would be held in suspension pending the outcome of the classification decision, and (2) HTSUS 8104.19.00 allows duty-free entry of the goods in question under NAFTA.

Second, the government argues that even if the Court of International Trade had jurisdiction over the case, Corrpro's NAFTA claims should have been denied because Corrpro did not satisfy the requirements of 19 U.S.C. § 1520(d) and 19 C.F.R. §§ 181.31 and 181.32 to file a protest within one year of importation and to submit Certificates of Origin at the time of the protest.  Finally, the government argues that if the trial court had jurisdiction over this matter, remand is appropriate to determine the merits of NAFTA eligibility because Customs did not meaningfully review Corrpro's NAFTA claim.

Corrpro responds that the Court of International Trade correctly held that it had jurisdiction because the "liquidations of the specific entries of Corrpro's merchandise, including the decisions merged into liquidation" were protestable decisions.  In the

alternative, Corrpro contends that the initial classification decision by Customs was a protestable decision, as determined by the trial court. Second, Corrpro argues that it acted reasonably in not claiming NAFTA treatment at entry or within one year of entry because making a NAFTA claim while HQ 550746 was in effect would have subjected Corrpro to the possible imposition of civil penalties. Corrpro also asserts that Congress did not intend that 19 U.S.C. § 1520(d) be the exclusive means for seeking NAFTA treatment subsequent to time of entry and that Corrpro could submit supporting documentation at a later time in compliance with the procedural requirements of 19 C.F.R. § 10.112. Finally, Corrpro argues that remand is unnecessary because the Court of International Trade correctly determined the classification of the imported anodes under de novo review.

We agree with the government that the Court of International Trade lacked jurisdiction over the complaint for lack of a protestable decision by Customs. 28 U.S.C. § 1581(a) establishes jurisdiction over protestable decisions, providing that the "Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." However, we recently held in Xerox that Customs' liquidation of an importer's entries was not a protestable decision with respect to preferential treatment under NAFTA because "Customs at no time considered the merits of NAFTA eligibility, nor could it [have] without a valid claim by [the importer] for such eligibility." 423 F.3d at 1363 (emphasis added). We observed, "[i]n the absence of a proper claim for NAFTA treatment, either at entry or within a year of entry . . . Customs cannot make a protestable decision to deny an importer preferential NAFTA treatment." Id. at 1365.

We concluded that because "the existence of a protestable decision of the type enumerated in 19 U.S.C. § 1514(a) is a condition precedent for jurisdiction to lie in the Court of International Trade under section 1581(a)," Xerox's appeal of an invalid protest was properly dismissed for lack of jurisdiction. Id. Accordingly, under our precedent, there is a protestable decision as to NAFTA eligibility that confers jurisdiction in the Court of International Trade under 28 U.S.C. § 1581(a) only when the importer has made a valid claim for NAFTA treatment, either at entry or within a year of entry, with a written declaration and Certificates of Origin presented in a timely fashion, and Customs has engaged in "some sort of decision-making process" expressly considering the merits of that claim. Id. at 1363 (quoting U.S. Shoe Corp. v. United States, 114 F.3d 1564, 1569 (Fed. Cir. 1997)).

Corrpro concedes that it did not make a post-importation NAFTA claim within a year of entry under 19 U.S.C. § 1520(d). Corrpro argues, however, that its late submission is excused because, under a standard of reasonable care, it could not make a NAFTA claim until after HQ 557046 was revoked. We will not decide that question; even assuming that Corrpro could have made a valid claim after the expiration of the one-year time limit, Corrpro cannot establish that Customs engaged in some sort of decision-making on the merits of a valid NAFTA claim. In order to make a valid NAFTA claim, an importer must submit a written declaration and the appropriate Certificates of Origin. 19 CFR §§ 181.11(a), 181.32. An importer may not circumvent these statutory and regulatory requirements. Corrpro did not submit the appropriate Certificates of Origin until 2002. Thus, neither Customs' initial classification decision, made in 1999, nor its liquidation of goods, made in 2000, could have been a decision on the merits of a

valid NAFTA claim, as no valid NAFTA claim existed at that time. As we held in Xerox, "[t]here is simply no basis for attributing to Customs a decision denying [a NAFTA] claim that did not exist." 423 F.3d at 1363. Moreover, there is no evidence that Customs in fact considered Corrpro's NAFTA claim after the Certificates of Origin were submitted in 2002, while Corrpro's action was pending in the Court of International Trade. Therefore, Customs did not make a protestable decision establishing jurisdiction under 28 USC § 1581(a).

In holding that it had jurisdiction over Corrpro's claim, the Court of International Trade erred in concluding that the initial classification decision by Customs in 1999 was a protestable decision. We recognize, of course, that Xerox was decided after the trial court rendered its decision in this case. In any event, the trial court's reasoning assumed that Corrpro had made a valid NAFTA claim at the time of entry, even though Corrpo had not yet raised that issue. But we cannot attribute to Customs a decision on a NAFTA claim that did not yet exist. Because Customs could not have considered and did not consider the merits of NAFTA eligibility in the initial classification decision, it did not make a protestable decision at that time. For the same reason, we disagree with Corrpro's argument that Customs' liquidation of the goods is a protestable decision. Customs could not have engaged in any sort of decision-making as to NAFTA eligibility in liquidating the goods because Corrpro had not yet raised the NAFTA issue.

Finally, Corrpro attempts to distinguish Xerox based on the Court of International Trade's determination that there was "no discernible evidence that Corrpro's NAFTA claim was not considered by Customs in [Customs' denial of Corrpro's 19 U.S.C. § 1514(a)] protest." Decision, slip op. at 14-15. That finding misses the point. We held

05-1073                                              -9-

in Xerox that Customs cannot make a protestable decision to deny an importer preferential NAFTA treatment in the absence of a proper claim for NAFTA treatment. 423 F.3d at 1365. Accordingly, our decision turns on whether Customs engaged in any decision-making on a valid NAFTA claim by Corrpro in 2002, not on whether there was a lack of evidence that Customs had not considered the issue of NAFTA eligibility when denying Corrpro's 19 U.S.C. § 1514(a) protest in 2001. No such decision-making occurred.

Because the Court of International Trade did not have jurisdiction over this matter, the denial of the government's motion to dismiss is reversed, and the remaining issues raised on appeal are moot.

CONCLUSION

Because Corrpro did not satisfy the statutory requirements in order to make a valid NAFTA claim until 2002, Customs could not have and did not consider the merits of that claim in its initial classification decision or liquidation. Accordingly, there was no protestable decision conferring jurisdiction on the Court of International Trade under 28 U.S.C. § 1581(a). The decision of that court denying the government's motion to dismiss and granting summary judgment for Corrpro is therefore

REVERSED.